1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DAVID FLORENCE,                          No.  2:11-cv-3119 GEB KJN P

12              Plaintiff,
                                              ORDER AND FINDINGS AND
13        v.                                  RECOMMENDATIONS

14   A.W. NANGALAMA, et al.,

15              Defendants.

16

17   I.  Introduction

18            Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19   to 42 U.S.C. § 1983.  Pending before the court is the motion to dismiss filed on behalf of

20   defendants Baider, Lopez, McDowell,[1] and Nangalama (hereafter "moving defendants"), solely

21   as to plaintiff's ninth, tenth, and thirteenth claims against defendants McDowell and Lopez.  (ECF

22   No. 34.)  On March 7, 2014, defendant Sarver filed a notice of joinder in moving defendants'

23   motion to dismiss.  However, defendant Sarver was not served in connection with plaintiff's

24   ninth, tenth or thirteenth claims for relief (ECF No. 19), and defendant Sarver offered no

25   argument in support of the dismissal of claims seven or eight in which defendant Sarver is named.

26   Moreover, moving defendants' motion was filed on January 16, 2014, and defendant Sarver's

27

28   _____

     [1]  Defendant McDowell was erroneously sued as "Madowel."  (ECF No. 34-1 at 1.)

                                              1

1   motion was not filed until March 7, 2014, after plaintiff's extended deadline for filing his

2   opposition expired.  Thus, defendant's motion for joinder is untimely and is denied.

3       The moving defendants move to dismiss for failure to state a claim pursuant to Federal

4   Rule of Civil Procedure 12(b)(6).  For the following reasons, the undersigned recommends that

5   defendants' motion be granted as to claims nine and ten and denied as to claim thirteen.

6   II.  Legal Standard

7       Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

8   "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

9   considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

10  must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89

11  (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v.

12  McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir.

13  1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more

14  than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a

15  cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words,

16  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

17  statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim

18  upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.

19  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

20  draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556

21  U.S. at 678.  Attachments to a complaint are considered to be part of the complaint for purposes

22  of a motion to dismiss for failure to state a claim.  Hal Roach Studios v. Richard Reiner & Co.,

23  896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

24      A motion to dismiss for failure to state a claim should not be granted unless it appears

25  beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

26  entitle him to relief.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  In general, pro se

27  pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner,

28  404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  Bretz

2

1    v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's liberal

2    interpretation of a pro se complaint may not supply essential elements of the claim that were not

3    pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

4    III.  Plaintiff's Third Amended Complaint

5          This action is proceeding on plaintiff's third amended complaint, with the exception of

6    claims one, six and twelve (ECF No. 19).  Because the instant motion is directed to three specific

7    claims (claims 9, 10, 13), the court will only address such claims.

8          In his ninth claim, plaintiff asserts that during the appeal review of Appeal SAC-10-09-

9    11646, defendant McDowell, a nurse on Facility B yard at California State Prison, Sacramento

10   ("CSP-SAC"), as well as defendants Bakewell and Nangalama, told plaintiff that if he withdrew

11   his appeal "they" would give plaintiff Methadone in pill rather than liquid form.  (ECF No. 17 at

12   32.)  Plaintiff refused.  Plaintiff also claims that defendant McDowell was retaliating against

13   plaintiff for exercising his First Amendment rights and that this had a chilling effect on those

14   rights.

15         In his tenth claim, based on plaintiff's allegations in his ninth claim, plaintiff alleges that

16   defendant McDowell retaliated against plaintiff by interfering, denying, and delaying plaintiff's

17   medical treatment.  (ECF No. 17 at 33.)  Plaintiff claims that he was called to B-Clinic about

18   Appeal SAC-10-09-11646 regarding his claims that defendants Bakewell, Sarver, Hemann and

19   Dr. Nangalama were deliberately indifferent to plaintiff's serious medical needs.  (ECF No. 17 at

20   33.)  Plaintiff alleges that during the appeal review, defendants Bakewell, Nangalama, and

21   McDowell told plaintiff that if he withdrew his appeal, they would provide plaintiff with

22   Methadone in pill form.  (Id.)  When plaintiff refused, plaintiff claims defendant McDowell put

23   plaintiff out of Dr. Nangalama's office in violation of the Eighth Amendment.

24         In the thirteenth[2] claim, plaintiff asserts that defendant Lopez labeled him a snitch in front

25   of other inmates which allegedly chilled his exercise of his First Amendment rights.

26   ////

27   _____

28   [2]  This claim was mislabeled as "Fourteenth" in plaintiff's third amended complaint, but the court
     and the parties now refer to it as the Thirteenth claim.  (ECF No. 19 n.1.)

1    IV.  Analysis

2           A.  Ninth Claim:  Retaliation

3           Defendant McDowell argues that plaintiff's ninth claim should be dismissed because

4    denial of an inmate appeal does not create a valid First Amendment claim; defendant McDowell

5    did not take any adverse action against plaintiff; and plaintiff failed to allege causation, facts in

6    support of chilling, and lack of a legitimate correctional goal.  (ECF No. 34-1 at 3-5.)  Defendants

7    point out that in another part of plaintiff's third amended complaint, plaintiff alleges that it was

8    defendant Bakewell who ordered plaintiff out of the office.  (ECF No. 17 at 9.)

9           In opposition to the motion, plaintiff states that during the appeal review on August 12,

10   2009, defendant McDowell was "lurking around" Dr. Nangalama's office  listening to plaintiff

11   speak with defendant Bakewell and Dr. Nangalama.  (ECF No. 41 at 13.)  Plaintiff alleges that

12   when he asked defendants Bakewell and Dr. Nangalama if they were retaliating against him for

13   filing appeals against them, "defendant McDowell stepped into the room . . . and stated "yes," and

14   when plaintiff asked defendants McDowell, Bakewell, and Dr. Nangalama if they "were

15   knowingly allowing plaintiff to take the liquid Methadone that was causing him to throw up, burn

16   his throat, and make him nauseated and have headaches, because they wanted to retaliate against

17   inmates who abused their medication, defendant McDowell said yes."  (ECF No. 41 at 13.)

18   Plaintiff claims that each of these defendants stated to plaintiff that if he withdrew his appeal,

19   they would give him Methadone back in pill form, and when plaintiff refused, defendants

20   McDowell, Bakewell, and Dr. Nangalama put plaintiff out of Dr. Nangalama's office "in

21   violation of [plaintiff's] First Amendment rights, through actions that did not advance any

22   legitimate penological goals."  (ECF No. 41 at 13.)

23           To succeed on a First Amendment retaliation claim, a plaintiff must show the following:

24   "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3)

25   that prisoner's protected conduct, . . . that such action (4) chilled the inmate's exercise of his First

26   Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

27   Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).  Although a

28   "chilling effect on First Amendment rights" is enough to state an injury, Gomez v. Vernon, 255

4

F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim.  Rizzo v. Dawson, 778 F.2d 527, 532 n.4 (9th Cir. 1985).  Although the timing of an official's action can be circumstantial evidence of retaliation, there must generally be something more than simply timing to support an inference of retaliatory intent.  See Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995).  An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity.  Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).  Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in these activities.

As argued by defendants, plaintiff failed to identify an adverse action defendant McDowell allegedly took against plaintiff.  Plaintiff does not identify defendant McDowell as the individual who first prescribed liquid Methadone as opposed to pill form Methadone.  Indeed, plaintiff fails to allege a connection or link between the alleged constitutional violation and defendant McDowell -- plaintiff alleges that defendant McDowell was "lurking around" outside the office where plaintiff was discussing his appeal with defendants Bakewell and Dr. Nangalama, and apparently inserted herself into the appeal review conversation.  Plaintiff provided documentary evidence that it was defendant Bakewell who addressed plaintiff's appeal. (ECF No. 17 at 74.)

Moreover, plaintiff alleges in the third amended complaint that it was defendant Bakewell who ordered plaintiff out of the office.  (ECF No. 17 at 9.)  In his administrative appeal that plaintiff filed concerning this incident, plaintiff also claimed that it was defendant Bakewell who ordered plaintiff to get out.  (ECF No. 17 at 50.)  Finally, in his August 30, 2009 letter to the Health Care Appeals Coordinator, plaintiff claimed that it was defendant Bakewell who told plaintiff to "get the hell out."  (ECF No. 17 at 78.)

////

1   In the third amended complaint, plaintiff also pled that it was Dr. Nangalama who

2   prescribed plaintiff Methadone in both the pill and liquid form.  (ECF No. 17 at 5.)  Even taking

3   as true plaintiff's allegation that defendant McDowell also verbally admitted that liquid

4   Methadone was given to plaintiff in retaliation for appeals, plaintiff provided no factual

5   allegations demonstrating that defendant McDowell administered or prescribed the liquid

6   Methadone to plaintiff.  Thus, defendant McDowell may be a witness to plaintiff's claims against

7   defendants Dr. Nangalama or Bakewell, but plaintiff alleges no facts suggesting that defendant

8   McDowell took any adverse action against plaintiff in retaliation for plaintiff's appeals.

9   In his opposition, plaintiff now claims that defendant McDowell orchestrated a conspiracy

10   with defendants Bakewell and Dr. Nangalama because she had plaintiff go to Dr. Nangalama's

11   office to speak about the adverse effect of liquid Methadone, but contends it was simply a ruse to

12   get plaintiff to withdraw his appeal in an attempt to cover up their alleged wrongdoing.  (ECF No.

13   41 at 16.)  However, plaintiff's third amended complaint alleges no facts supporting a conspiracy

14   theory on the part of defendant McDowell.  While such evidence may support plaintiff's

15   contention that defendants Dr. Nangalama or Bakewell acted with a culpable state of mind, it is

16   not a constitutional violation for defendants to attempt to resolve an administrative appeal;

17   indeed, it is fairly standard practice for parties to attempt to negotiate settlement of pending

18   claims.  Moreover, it is not a constitutional violation that defendant Bakewell took steps to

19   resolve an administrative appeal concerning Bakewell's own actions or inactions.[3]  Plaintiff

20   alleges no facts supporting a plausible cause of action for conspiracy.  Ashcroft v. Iqbal, 556 U.S.

21   662, 680-81 (2009) (conclusory allegations are "not entitled to the assumption of truth.")

22   Moreover, defendants were not required to respond to such a claim in this court's April 3, 2013

23   screening order.

24   ////

25   _____

[3] Violations of state prison rules and regulations, without more, do not support any claims under
26   section 1983.  Ove v. Gwinn, 264 F.3d 817, 824 (9th Cir. 2001); Sweaney v. Ada County, Idaho,
119 F.3d 1385, 1391 (9th Cir. 1997).  Only if the events complained of rise to the level of a
27   federal statutory or constitutional violation may a prisoner pursue them under section 1983.  Patel
v. Kent School Dist., 648 F.3d 965, 971 (9th Cir. 2011); Jones v. Williams, 297 F.3d 930, 934
28   (9th Cir. 2002).

For all of the above reasons, defendants' motion to dismiss plaintiff's ninth claim against defendant McDowell should be granted.

B.  Tenth Claim:  Eighth Amendment Claim Against Defendant McDowell

Defendants contend that in the third amended complaint, plaintiff does not allege that defendant McDowell failed to provide him medical treatment or even delayed his medical treatment; rather, plaintiff's claim against defendant McDowell is based on plaintiff's belief that he should have been prescribed pill form Methadone rather than liquid form.  Defendants argue that this constitutes a mere difference of opinion which does not rise to the level of a constitutional violation.

In opposition, plaintiff claims that during the August 12, 2009 appeal review, defendant McDowell was "lurking around" Dr. Nangalama's office door listening to plaintiff speak with defendants Bakewell and Dr. Nangalama.  (ECF No. 41 at 14.)  Plaintiff claims that defendant McDowell stepped in to join defendants Bakewell and Dr. Nangalama when they all verbally agreed that plaintiff was prescribed liquid Methadone rather than pill form, allegedly to retaliate against plaintiff for filing appeals.  (ECF No. 41 at 14.)  Plaintiff also alleges that they all responded "yes," when he asked them if they "knowingly allow[ed] plaintiff to take the liquid Methadone [] that was causing him to throw up, burn his throat, and make him nauseated and have headaches, because they wanted to retaliate against inmates who abused their medication."  (ECF No. 41 at 14.)  Plaintiff contends these three defendants offered to give plaintiff Methadone in pill form if plaintiff withdrew his appeal, but plaintiff refused.  (Id.)

Plaintiff argues that "defendants misapprehend plaintiff's claim."  (ECF No. 41 at 21.)  Plaintiff claims that defendants were "aware that plaintiff faced a substantial risk of harm when plaintiff came to them and told them that the liquid Methadone was causing him to become nauseated, having severe headaches, and throwing up blood at times and they [drew] the inference that failure to treat plaintiff's condition could result in further significant injury and disregarded the risk by not taking reasonable steps to abate it by forcing plaintiff to continue to take the liquid Methadone."  (ECF No. 14 at 21.)  Specifically, plaintiff contends that defendant McDowell was aware, pursuant to the "Urgent/Emergent Response" contained in the Inmate

1  Medical Services Policies, "that plaintiff had [] serious medical emergency needs." (ECF No. 14

2  at 21-22.)  Plaintiff then reiterates his claim that defendant McDowell was deliberately indifferent

3  to plaintiff's serious medical needs by "denying, delaying, and intentionally interfering with his

4  medical treatment." (ECF No. 14 at 22.)

5        An individual defendant is not liable on a civil rights claim unless the facts establish the

6  defendant's personal involvement in the constitutional deprivation or a causal connection between

7  the defendant's wrongful conduct and the alleged constitutional deprivation.  See Hansen v.

8  Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir.

9  1978).

10        To state a claim for violation of the Eighth Amendment based on inadequate medical care,

11  plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to

12  serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  To prevail, plaintiff must

13  show both that his medical needs were objectively serious, and that defendant possessed a

14  sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 297-99 (1991); McKinney v.

15  Anderson, 959 F.2d 853, 854 (9th Cir. 1992).  A serious medical need is one that significantly

16  affects an individual's daily activities, an injury or condition a reasonable doctor or patient would

17  find worthy of comment or treatment, or the existence of chronic and substantial pain.  See, e.g.,

18  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir.1992), overruled on other grounds by

19  WMX Techs. v. Miller, 104 F.2d 1133, 1136 (9th Cir. 1997) (en banc).

20        Deliberate indifference may be shown by the denial, delay or intentional interference with

21  medical treatment or by the way in which medical care is provided.  Hutchinson v. United States,

22  838 F.2d 390, 394 (9th Cir. 1988).  To act with deliberate indifference, a prison official must both

23  be aware of facts from which the inference could be drawn that a substantial risk of serious harm

24  exists, and he must also draw the inference.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Thus,

25  a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and

26  disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

27        However, "a complaint that a physician has been negligent in diagnosing or treating a

28  medical condition does not state a valid claim of medical mistreatment under the Eighth

1   Amendment.  Medical malpractice does not become a constitutional violation merely because the

2   victim is a prisoner."  Estelle, 429 U.S. at 106.  Isolated occurrences of neglect do not constitute

3   deliberate indifference to serious medical needs.  See Jett v. Penner, 439 F.3d 1091, 1096 (9th

4   Cir. 2006); McGuckin v. Smith, 974 F.2d at 1060.

5          Here, plaintiff's Eighth Amendment allegations against defendant McDowell turn on the

6   context in which plaintiff presented to medical on August 12, 2009, because plaintiff was called

7   to medical for an appeal review.  (ECF No. 17 at 7.)  Defendants Dr. Nangalama and Bakewell

8   met with plaintiff concerning his administrative appeal.  Plaintiff did not present to medical on

9   August 12, 2009 for medical treatment.  Rather, plaintiff was attempting to have his medication

10  for Methadone changed from liquid form to pill form through his administrative appeal.  Plaintiff

11  sets forth no allegations that defendant McDowell was responsible for treating plaintiff's medical

12  needs on August 12, 2009, or that defendant McDowell was responsible for prescribing or

13  administering the liquid Methadone at issue.  Plaintiff's reliance on prison policies governing

14  emergency medical treatment are unavailing because plaintiff did not present to medical with

15  emergency symptoms on August 12, 2009.

16         Prisoners may be able to state a cognizable civil rights claim if there is an ongoing

17  constitutional violation and the prison employee or appeals coordinator had the authority and

18  opportunity to prevent the ongoing violation, yet failed to prevent it.  See Taylor v. List, 880 F.2d

19  1040, 1045 (9th Cir. 1989) (supervisory official liable under Section 1983 if he or she knew of a

20  violation and failed to act to prevent it).  Here, however, plaintiff's third amended complaint

21  makes clear that Dr. Nangalama was in charge of prescribing plaintiff's medications.  Defendant

22  Bakewell interviewed plaintiff on August 12, 2009 for Appeal #SAC-10-09-11646, and cancelled

23  plaintiff's appeal on August 24, 2009.  (ECF No. 1 at 73-74.)  Thus, as found in this court's

24  screening order, plaintiff stated cognizable claims against defendants Dr. Nangalama and

25  Bakewell in connection with the events of August 12, 2009.  However, plaintiff alleged no facts

26  as to defendant McDowell's alleged role, if any, in addressing plaintiff's administrative appeal,

27  and review of the appeal documents provided by plaintiff do not reflect McDowell's involvement

28  therein.  Because defendant McDowell was not involved in resolving plaintiff's appeal,

9

1    McDowell cannot be responsible for failing to follow up or seek additional treatment for plaintiff

2    during their brief encounter on August 12, 2009, because defendant McDowell had no such

3    authority as demonstrated by the documents provided by plaintiff.

4         Accordingly, for the reasons discussed above, the undersigned recommends that

5    defendants' motion to dismiss plaintiff's Eighth Amendment claim against defendant McDowell

6    be granted.

7              C.  Thirteenth Claim:  Retaliation Claim Against Defendant Lopez

8         In their opposition, defendants contend verbal harassment, standing alone, is insufficient

9    to state a cognizable civil rights claim.  (ECF No. 34-1 at 8.)  Defendants distinguish

10   Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989), where the defendants

11   conspired to label the prisoner a snitch in front of other inmates in order to have the other inmates

12   kill the prisoner.  Id.  Defendants contend that a fair reading of plaintiff's factual allegations

13   demonstrate that defendant Lopez snapped at plaintiff, which was overheard by others, but that

14   the "snitch ass" uttered by Lopez was meant to refer to plaintiff's actions in writing up Lopez, not

15   other inmates.  (ECF No. 34-1 at 8.)  Defendants point out that plaintiff alleges no facts of a

16   conspiracy or intent to harm, or that plaintiff was ever threatened or harmed by inmates as a result

17   of this incident.  (Id.)  Defendants also state that plaintiff "is not asserting an Eighth Amendment

18   claim against Lopez."  (ECF No. 34-1 at 8.)

19        In opposition, plaintiff claims that in the motion to dismiss, defendant Lopez admits

20   calling plaintiff a snitch in front of other inmates,[4] but argues that in fact defendant Lopez denied

21   calling plaintiff a snitch because she was aware that to do so would violate California Code of

22   Regulations. Title 15 § 3084.1(d) .  (ECF No. 41 at 17.)  Plaintiff claims that defendant Lopez

23   intentionally made false statements in an official investigation because she told Sgt. Glantz on

24   June 8, 2011, that she "honestly does not recall anything what [sic] plaintiff is claiming in his

25   ───────────────

26   [4]  Plaintiff characterizes defense counsel's argument as defendant Lopez "admits to calling
     plaintiff a snitch in front of a group of inmates."  (ECF No. 41 at 23, citing to ECF No. 34-1 at 8.)
     Plaintiff is advised that defendants' counsel's argument in connection with this claim does not
27   constitute an admission on the part of defendant Lopez.  At the pleading stage, the court must
     accept as true the allegations of the complaint, and defendants' arguments in connection therewith
28   are not a concession as to the validity of such allegations.

                                            10

1  appeal, she never called plaintiff a snitch and never heard defendant E. Colter call plaintiff a

2  snitch." (ECF No. 41 at 23.)  Plaintiff claims that defendant Lopez put plaintiff's life in danger

3  by calling him a snitch.  (ECF No. 41 at 17.)

4       Plaintiff also claims that after defendant Colter called plaintiff a snitch several times at the

5  gate, defendants Lopez and Colter left the area for ten minutes, leaving plaintiff outside the gate

6  with the other inmates, and that based upon a

> 7     fair reading of plaintiff's allegations and circumstantial evidence, a
> 8     jury could find that these defendants made the statement in front of
>     the group of inmates and left the area for plaintiff to be harmed in
> 9     retaliation for filing inmate/appeals against them, because the
>     inmates did not know who plaintiff was supposedly snitching on,
> 10     due to all the informing that inmates do on each other, the inmates
>     could have reasonably believed plaintiff had been informing on
> 11     other inmates, and defendants A. Lopez and E. Colter [were] upset
>     about it.

12  (ECF No. 41 at 17.)  Plaintiff alleges that this was not the first time that defendant Lopez called

13  plaintiff a snitch in front of other inmates; allegedly she has done so on several occasions.  (ECF

14  No. 41 at 17, citing Pl.'s Exs. DF. 18, 21 & 25.)

15       To state a claim for retaliation under the First Amendment, plaintiff must satisfy five

16  elements:  "(1) An assertion that a state actor took some adverse action against an inmate (2)

17  because of (3) that prisoner's protected conduct, . . . that such action (4) chilled the inmate's

18  exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

19  correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

20       Adverse action is action that "would chill a person of ordinary firmness" from engaging in

21  that activity.  Pinard, 467 F.3d at 770.  Both litigation in court and filing inmate grievances are

22  protected activities and it is impermissible for prison officials to retaliate against inmates for

23  engaging in these activities.  However, not every allegedly adverse action will be sufficient to

24  support a claim under section 1983 for retaliation.  In the prison context, cases in this Circuit

25  addressing First Amendment retaliation claims involve situations where the action taken by the

26  defendant was clearly adverse to the plaintiff.  Rhodes, 408 F.3d at 568 (arbitrary confiscation

27  and destruction of property, initiation of a prison transfer, and assault in retaliation for filing

28  grievances); Bruce, 351 F.3d at 1288 (retaliatory validation as a gang member for filing

1   grievances); <u>Hines v. Gomez</u>, 108 F.3d 265, 267(9th Cir.1997) (retaliatory issuance of false rules

2   violation and subsequent finding of guilt); <u>Pratt</u>, 65 F.3d at 806 (retaliatory prison transfer and

3   double-cell status); <u>Valandingham</u>, 866 F.2d at 1138 (an inmate labeled a snitch by prison

4   officials for filing grievances may state a claim under § 1983).

5          Here, the court addresses plaintiff's arguments in reverse order.  First, the exhibits to

6   which plaintiff refers do not show that defendant Lopez called plaintiff a snitch on several

7   occasions.  (<u>See</u> ECF No. 17-5 at 15, 18 & 22.)  Such exhibits are declarations by inmates Childs,

8   Woods, and Nicholson supporting plaintiff's claims in his complaint, but do not recount other

9   instances where defendant Lopez allegedly called plaintiff a snitch.  In any event, even if

10  defendant Lopez had done so, such allegations are not part of plaintiff's third amended complaint.

11  The focus here is on plaintiff's allegations concerning what happened in March of 2011.

12         Moreover, in the court's screening order, the court found potentially cognizable only

13  plaintiff's retaliation claim that defendant Lopez labeled plaintiff a snitch in front of other

14  inmates.  (ECF No. 19 at 10.)  Plaintiff alleges that defendant Lopez labeled plaintiff a snitch in

15  connection with the third incident that occurred at the gate on March 28, 2011.  There were no

16  allegations that defendant Lopez called plaintiff a snitch while plaintiff was at the gate on March

17  23, 2011.  However, in order to address plaintiff's contention as to a "fair reading" of his

18  allegations pertaining to the incident that occurred at the gate, included in his "first incident," the

19  court recounts plaintiff's specific allegations from the third amended complaint:

20         Plaintiff alleges that in response to filing inmate appeals against
           defendant A. Nangalama defendant A. Lopez retaliated against him.
21

22         First Incident:  On March 23, 2011, plaintiff was escorted to the
           medical by defendant A. Lopez regarding an inmate appeal and
23         examination[.]  [W]hen plaintiff got to the pedestrian sallyport gate
           defendant E. Colter told plaintiff to go back out[.]  [D]efendant A.
24         Lopez stated to defendant E. Colter that she was escorting plaintiff
           to the medical[.]  [D]efendant E. Colter said I do not give a damn.
25         [T]hen stated to plaintiff you go your snitch ass back out the gate.
           [D]efendant A. Lopez asked defendant E. Colter what did you
26         say[?]  [D]efendant E. Colter stated this snitch ass motherfucker is
           going back out the gate stating he wants to file appeals against me.
27         At the time it was a group of inmates who stopped talking and start
           looking at plaintiff.  [D]efendants A. Lopez and E. Colter left
28         plaintiff  at the gate and went into the medical[.]  [A]fter 10 minutes

> defendant E. Colter came back to get plaintiff and stated bring your
> snitch ass on[.] . . .

(ECF No. 17 at 37-38.)  Plaintiff's allegations, fairly read, do not support plaintiff's interpretation of the events at the gate set forth in his opposition.  Rather, it appears that defendant Lopez was either surprised or taken aback by defendant Colter's comments by asking him, "what did you say"?  Defendant Colter was standing in the way of defendant Lopez's escort, and based on defendant Lopez's question, a fair reading of these allegations reflects that she and defendant Colter went into medical to work it out, not to set plaintiff up for an attack by the group of inmates left outside the gate with plaintiff.  Plaintiff provided no additional factual allegations supporting an inference that Colter and Lopez went into medical to set plaintiff up, and plaintiff alleged no facts demonstrating the other inmates threatened him during the ten minute period.  Moreover, when defendant Colter responded to defendant Lopez's question, defendant Colter clarified that plaintiff "wants to file appeals against me."  In light of Colter's subsequent comment, defendants could not be confused that defendant Colter was saying plaintiff snitched against the inmates.  Finally, because plaintiff did not allege that defendant Lopez called plaintiff a snitch at the gate, there is no adverse action attributable to defendant Lopez.  Thus, plaintiff's allegations concerning what occurred at the gate on March 23, 2011, fail to state a retaliation claim against defendant Lopez.

The court turns now to plaintiff's allegations that support the retaliation claim the court found potentially cognizable against defendant Lopez.  (ECF No. 19 at 10.)  Plaintiff initially alleges that in response to plaintiff filing appeals against defendant Dr. Nangalama, defendant Lopez retaliated against plaintiff.  (ECF No. 17 at 37.)  Plaintiff claims that on March 23, 2011, when defendants Colter and Lopez brought plaintiff into medical,

> defendant E. Colter and A. Lopez came into the room where the
> nurses were stumbling in the way of the nurse[.] [sic]  [T]hen came
> to defendant A. Nangalama office door[.]  [S]tood there listening to
> plaintiff and defendant A. Nangalama.  Plaintiff handed defendant
> A. Nangalama his medical chromos and stated he needed them
> renewed[.]  [D]efendant A. Nangalama wanted some urine from
> plaintiff.  Plaintiff forgot he left his paper work in defendant A.
> Nangalama office and was about to go back to get it and defendant
> E. Colter jumped in his path.  Plaintiff was taking the urine back to

> the nurse and defendant A. Lopez walked up to plaintiff smelling like alcohol with plaintiff[s] chronos in her hand[.]   [She] began talking crazy to plaintiff.  Plaintiff told her he was writing her up.

(ECF No. 17 at 37-38.)  The next day, March 24, 2011, plaintiff alleges that defendants Colter and Lopez "came to housing B-6 and hollered to all inmates they were only allowing one inmate at the medication cart at a time and they could thank plaintiff."  (ECF No. 17 at 38.)

> Third Incident.   On March 28, 2011, plaintiff tried to give defendants E. Colter and A. Lopez a copy of the memorandum by CSP-SAC Warden regarding medication distribution.  [D]efendants stated fuck that memo.  [D]efendant A. Lopez walked up to plaintiff and said I do not want nothing from your snitch ass while a group of inmates were standing around listening in violation of his First Amendment rights and that defendant chilled the effect of plaintiff['s] exercise of his First Amendment rights through actions that did not advance any legitimate penological goals nor are tailored narrowly enough to achieve such goals.

(ECF No. 17 at 38.)  Plaintiff provided signed declarations from inmates Reeda and Nicholson (ECF No. 17-5 at 19 & 21) confirming that they witnessed defendant Lopez's comments on March 24, 2011, and both added the statement:  "And that's what happens when people get to snitching."  (Id.)  Plaintiff also provided the signed declaration of inmate Nicholson who declares he witnessed the events on March 28, 2011, and saw defendant Lopez walk up to plaintiff and aggressively get in his face and state:  "I don't want nothing from your snitch ass."  (ECF No. 17-5 at 22.)

   The court, liberally construing plaintiff's third amended complaint, found that plaintiff's allegations against defendant Lopez were "sufficient at the screening stage for this claim to move forward.  See Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (being labeled a snitch in front of other inmates may give rise to a retaliation claim)."  (ECF No. 19 at 10.)

   In support of dismissal, defendants contend that Valandingham is distinguishable because there the plaintiff alleged a specific intent and conspiracy to cause Valandingham harm.  (ECF No. 34-1 at 8.)  Defendants argue that plaintiff fails to state a claim for retaliation because plaintiff fails to allege a conspiracy or intent to harm, and that plaintiff did not allege that he was ever threatened or harmed by inmates as a result of Lopez's statement.

////

14

In the complaint filed by <u>Valandingham</u>, the prisoner plaintiff

> alleged that because he had petitioned prison and government officials for redress of his grievances, Bojorquez and Moen had conspired to label him a "snitch" and thereby subject him to retaliation by inmates. C.R. 1 at 3-6. He further alleged that on or about September 27, 1986, he was approached by fellow prisoners and threatened with harm because Bojorquez and Moen had told other inmates in the law library that Valandingham was a snitch. <u>Id.</u> at 6.  Valandingham alleged that Bojorquez and Moen labeled him a "snitch" with the intent of having Valandingham killed by inmates. <u>Id.</u> at 9.

<u>Valandingham</u>, 866 F.2d at 1138.  In reviewing the complaint, the Ninth Circuit stated that:

> These allegations may support a cause of action under section 1983. If the facts alleged by Valandingham are true, he may have a claim under section 1983 not only for violation of his right to be protected from violence while in custody, but also for violation of his right of access to the courts.  <u>See Bounds v. Smith</u>, 430 U.S. 817, 828, 97 S. Ct. 1491, 1498, 52 L.Ed.2d 72 (1977).  Thus, on the facts alleged in Valandingham's complaint, there is no basis for dismissal.  For dismissal to have been appropriate, therefore, the subsequent papers filed by defendants and Valandingham must have shown that there was "no genuine issue of material fact" in dispute.

<u>Valandingham</u>, 866 F.2d at 1138.

While plaintiff's claim is not on all fours with <u>Valandingham</u>, 866 F.2d at 1138, plaintiff's allegations, liberally construed, are sufficient to state a claim for retaliation.  Taking plaintiff's allegations as true, plaintiff claims that in response to plaintiff filing appeals against defendant Dr. Nangalama, and in response to plaintiff threatening to write defendant Lopez up, defendant Lopez retaliated against plaintiff by telling other inmates that it was plaintiff's fault that access to the medication cart was limited to one inmate, and by calling plaintiff a "snitch ass" in front of other inmates, which put plaintiff's life at risk of harm from other inmates.  Defendants argue that plaintiff's claim fails because defendant Lopez's use of the term "snitch ass" was meant to refer to plaintiff's actions in writing up defendant Lopez.  However, unlike plaintiff's claims regarding the "first incident," there are no factual allegations explaining Lopez's reference to snitch. Questions of motivation are not appropriately resolved on a motion to dismiss.  Moreover, as noted by defendants, plaintiff is not claiming an Eighth Amendment violation.  Plaintiff does not have to plead facts demonstrating a culpable state of mind in a retaliation claim under <u>Rhodes</u>.

////

15

1    Arguably, defendant Lopez's adverse action was calling plaintiff a "snitch ass" and

2    blaming him for the limited access to the medication cart, both in front of other inmates,

3    potentially subjecting plaintiff to inmate retribution, but in any event chilling him from exercising

4    his First Amendment rights.  Use of the term "snitch" in the prison setting is inflammatory and

5    may pose a danger to an inmate's safety, distinguishing it from vulgarity or other offensive terms

6    that constitute mere harassment.  A variety of conduct can be actionable as retaliatory if

7    undertaken for an improper purpose.  See, e.g., Rizzo, 778 F.2d at 531-32.

8    "In a constitutional tort, as in any other, a plaintiff must allege that the defendant's actions

9    caused him some injury."  Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000).  However, the

10   resulting injury need not be tangible to support the claim.  Hines v. Gomez, 108 F.3d 265, 267,

11   269 (9th Cir. 1997) (an injury asserted to be the chilling effect of an officer's false accusation on

12   the prisoner's First Amendment right to file prison grievances is sufficient to support a retaliation

13   claim).  Here, plaintiff alleges that defendant Lopez's actions in calling plaintiff a "snitch ass" did

14   not advance a legitimate correctional goal, and allegedly chilled plaintiff's First Amendment

15   rights.  Under the facts alleged by plaintiff, the alleged injury is the chilling of his First

16   Amendment rights.

17   Thus, the undersigned recommends that defendants' motion to dismiss plaintiff's

18   thirteenth claim be denied.

19   D.  Additional Arguments by Plaintiff

20   In his opposition to the motion to dismiss, plaintiff included arguments concerning

21   qualified immunity and alleged state law claims.  However, defendants did not argue that they are

22   entitled to qualified immunity, and this action is not proceeding on any state law claims.

23   Therefore, the court does not address such arguments.

24   V.  Conclusion

25   For all of the above reasons, defendants' motion to dismiss plaintiff's claims nine and ten

26   against defendant McDowell should be granted, and the motion to dismiss the retaliation claim

27   against defendant Lopez (plaintiff's thirteenth claim) should be denied.

28   ////

16

1    Plaintiff has had multiple opportunities to amend and appears unable to allege facts

2    showing a cognizable claim for relief against defendant McDowell.  Therefore, the court finds

3    that further leave to file amend would be futile.  See Gompper v. VISX, Inc., 298 F.3d 893, 898

4    (9th Cir. 2002) (leave to amend need not be granted where amendment would be futile).

5    Accordingly, IT IS HEREBY ORDERED that:

6    1.  Defendant Sarver's notice of joinder in the moving' defendants' motion to dismiss

7    (ECF No. 40) is denied; and

8    2.  Within fourteen days from the date of this order, defendant Sarver shall file a

9    responsive pleading.

10    IT IS HEREBY RECOMMENDED that:

11    1. Defendants' motion to dismiss (ECF No. 34) be granted as to claims nine and ten

12    against defendant McDowell, and denied as to plaintiff's retaliation claim against defendant

13    Lopez; and

14    2.  Defendants Lopez, Baider, and Nangalama be directed to file a responsive pleading

15    within fourteen days from any district court order adopting the instant findings and

16    recommendations.

17    These findings and recommendations are submitted to the United States District Judge

18    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

19    after being served with these findings and recommendations, any party may file written

20    objections with the court and serve a copy on all parties.  Such a document should be captioned

21    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

22    objections shall be filed and served within fourteen days after service of the objections.  The

23    parties are advised that failure to file objections within the specified time may waive the right to

24    appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

25    Dated:  July 22, 2014

26

27    flor3119.mtd

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

28

17