UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID FLORENCE,<br><br>        Plaintiff,<br><br>    v.<br><br>A.W. NANGALAMA, et al.,<br><br>        Defendants. | No.  2:11-cv-3119 GEB KJN P<br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner currently housed at R. J. Donovan Correctional Facility ("RJD"), proceeding without counsel.  This civil rights action is proceeding on plaintiff's claims against defendants Sarver, Baider, Lopez and Colter, in which he alleges that defendants retaliated against plaintiff for filing administrative appeals, and plaintiff's Eighth Amendment claims against defendants Dr. Nangalama, Bakewell and Sarver, in which plaintiff alleges defendants were deliberately indifferent to plaintiff's serious medical needs concerning his treatment with liquid Methadone.  (ECF No. 19.)  Each defendant is employed at California State Prison, Sacramento ("CSP-SAC"), and the alleged violations arose from incidents that occurred while plaintiff was housed at CSP-SAC.

On September 15, 2014, plaintiff filed a motion styled, "Motion for a court order due to plaintiff being in imminent danger to have R.J. Donavan Warden and his agents refrain from further retaliation against plaintiff."  (ECF No. 58.)  The court construes plaintiff's motion as a

1

1  motion for injunctive relief.  As set forth more fully below, the court finds that plaintiff's motion
2  for injunctive relief should be denied without prejudice.
3  Plaintiff's Motion
4  　　　　Plaintiff claims that the Warden and his agents at RJD are retaliating against plaintiff for
5  filing inmate appeals against them.  As background, plaintiff claims that he has been diagnosed
6  with degenerated discs in his spine, arthritis in his back, pinched nerves in his left shoulder and
7  wrist, infection in the bladder, and enlarged prostate and left testicle.  (ECF No. 58 at 2.)  Based
8  on such medical condition, plaintiff states that Dr. Nangalama prescribed plaintiff chronos for
9  waist chains, extra mattress, and lower bunk.  (Id.)  Plaintiff claims he was transferred to RJD
10 because it is a medical facility with an Enhanced Outpatient Program ("EOP") for inmates with a
11 custody level of level-3.  Plaintiff is a level 3 inmate.
12 　　　　On March 7, 2014, a nurse practitioner at RJD issued plaintiff a chrono for a temporary
13 lower bunk for ninety days.  However, plaintiff claims that because the RJD chief medical officer
14 ("CMO") refused to sign off on the lower bunk chrono within five days, plaintiff was housed on
15 an upper bunk by Correctional Officer R. Davis.  (ECF No. 58 at 3.)  Plaintiff alleges that he "has
16 been writing to [the] RJD Warden explaining medical conditions and how Dr. G. Casian and
17 other medical staff [have] been deliberately indifferent to plaintiff's serious medical needs and
18 how they have been having [correctional officers] retaliate against plaintiff by filing false
19 disciplinary reports against him," but the warden has not taken any corrective action.  (ECF No.
20 58 at 3.)  Plaintiff also claims that Captain Sancheze told plaintiff that "if plaintiff files one more
21 appeal, she was sending plaintiff to the hold and transfer[ring] him to another prison."  (Id.)
22 　　　　Plaintiff appears to allege that his life was placed in danger because plaintiff was housed
23 on an upper bunk.  (ECF No. 58 at 3.)  On April 22, 2014, plaintiff fell off the top bunk, hitting
24 his arm, twisting his ankle, and falling on his back.  (ECF No. 58 at 3.)  On May 8, 2014, plaintiff
25 went to see Dr. Casian and told her he needed to have his lower bunk chrono renewed, that he fell
26 off the top bunk, and that plaintiff was still experiencing pain in his back, genitals, ankle and arm.
27 Plaintiff contends that Dr. Casian told plaintiff that she was not renewing the lower bunk chrono.
28 ////

2

1   When plaintiff complained of stomach pain, Dr. Casian allegedly told plaintiff to return and she
2   would give plaintiff something for his stomach.  (ECF 58 at 4.)
3       When plaintiff returned to the medical clinic, he alleges he witnessed a correctional
4   officer assault an inmate.  (ECF No. 58 at 4.)  On May 11, 2014, plaintiff wrote a CDC 7362 to
5   psychiatrist P. Naranjo, explaining that he had witnessed an assault on an inmate, and stated that
6   "Dr. Casian was trying to set [plaintiff] up to hurt her by the way she disrespect [sic] him when he
7   goes to see her," and plaintiff "is never going to see her again."  (ECF No. 58 at 4.)
8       The CDC 7362 form states:

> I need to see Psychiatrist Naranjo due to the pain [that] I'm experiencing in my back & genitals which is causing me to become more depressed and more vexed, paranoid due to doctor G. Casian trying to kill me.  I know that she [is] trying to set me up to try to hurt her but I [won't], I'm never going to see her again.  I went to see her on 5/8/14 & told her I fell off the top bunk on my back & twisted my ankles & [am] in pain from that & had problem urinating & #2 & she did nothing.

14  (ECF No. 58 at 15.)
15      Plaintiff further alleges that on May 21, 2014, Captain Sanchae [sic] had Lt. R Davis place
16  plaintiff in administrative segregation ("ASU"), stating that plaintiff made threats toward Dr.
17  Casian.  (ECF No. 58 at 5.)  On May 29, 2014, plaintiff appeared before the Institution
18  Classification Committee ("ICC") for the alleged threats.  Plaintiff claims that he showed the ICC
19  "about 15 inmate appeals he wrote against Dr. Casian for assault again plaintiff, deliberate
20  indifference to plaintiff's medical needs, and falsifying documents to cover up her misdeeds."
21  (ECF No. 58 at 5.)  Plaintiff claims that the ICC concluded that the CDC 7362 was not a threat,
22  "but elected to retain plaintiff in the ASU," and that "Warden D. Paramo stated to give him two
23  weeks and he was going to speak with some medical people."  (ECF No. 58 at 5.)  Plaintiff was
24  placed on non-disciplinary status, which plaintiff contends means he can retain all personal
25  property allowed in general population, except for his TV because all electric plugs are removed
26  from ASU cells.  However, plaintiff contends prison officials are punishing him by refusing to
27  allow him his personal clothing, pictures, CD player, radio, legal materials pertinent to the instant
28  case, or to make phone calls.  (ECF No. 58 at 6.)  Plaintiff alleges he has other cases to file in the

1   Central District but that prison officials refuse to give them to him.  Plaintiff claims he was told
2   by the property officer that his supervisor told him that plaintiff "could only have one cubic feet
3   worth of legal material and to get anymore plaintiff has to trade the one cubic foot for another one
4   cubic foot."  (ECF No. 58 at 7.)  Plaintiff claims this is not the policy, but that he has received no
5   response to his inmate request for interview concerning this deprivation.  (ECF No. 58 at 7.)

6          Plaintiff contends that after he left the ICC hearing, the ICC conspired to transfer plaintiff,
7   obtained a sixty day extension to keep plaintiff in the ASU, and then "conspired with Dr. Casian
8   to back date a CDC-128-B chrono stating she has safety concerns because plaintiff made implied
9   threats toward her."  (ECF No. 48 at 6.)  Plaintiff claims this was done to prevent his return to
10  Facility A where Dr. Casian works.

11         Further, plaintiff alleges that the appeals coordinators are impeding plaintiff's efforts to
12  exhaust his administrative remedies by rejecting his appeals for any reason, and then cancelling
13  the appeal when plaintiff attempts to follow their instructions.  (ECF No. 58 at 7.)

14         Finally, plaintiff states that because of the alleged retaliation and the failure to provide
15  him medical treatment, he has been on a hunger strike "for about a month" to get prison officials
16  to speed up his transfer.  (ECF No. 58 at 6.)  Plaintiff claims they are delaying his transfer
17  because RJD "gets more money" for inmates housed in ASU than for inmates housed in general
18  population.  (ECF No. 58 at 8.)  Plaintiff states that he "is already receiving mental health
19  treatment for depression and know that plaintiff is vulnerable to suicide and that's the reason
20  plaintiff is in the EOP program[.]  [T]hese actions [have] significantly made plaintiff['s]
21  depression wors[e]."  (ECF No. 58 at 8.)

22         Plaintiff concedes that he has no constitutional right to be housed at a particular prison,
23  but seeks an order directing the Secretary of the California Department of Corrections and
24  Rehabilitation to require the RJD warden to provide plaintiff with (a) his legal materials pertinent
25  to the instant case so that plaintiff can conduct discovery; (b) all other legal materials that plaintiff
26  has to file with courts in other districts; and (c) "redirect Dr. Casian to another position at RJD
27  and release plaintiff back to Facility A pending transfer."  (ECF No. 58 at 8.)  In the alternative,
28  plaintiff seeks an order directing the RJD warden to immediately transfer plaintiff.  (Id.)

1 Plaintiff's motion was signed on September 10, 2014.  (ECF No. 58 at 8.)

2 Plaintiff's Exhibits

3 The May 29, 2014 ASU placement notice sets forth the following reasons for plaintiff's placement in the ASU:

> On Monday, May 21, 2014, information was received that . . . [plaintiff] submitted a referral with threatening content toward Dr. G. Casian, writing "she is trying to set me up to hurt her but I won't."  A review of [plaintiff's] past contact with Dr. Casian reveal that he was continually uncooperative and disrespectful during his appointments with her.  Dr. Casian expressed concerns that [plaintiff's] threatening behavior toward her and his symptoms of mental illness and behavior of poor impulse control and violence may lead to his assaulting her.  Dr. Casian feels that [plaintiff] should not be allowed to return to the facility as he may carry out violence toward her.  Based on the aforementioned, [plaintiff is] deemed a threat to the Safety of the institution.  Therefore, [plaintiff is] being placed in [ASU] pending an Administrative Review of [plaintiff's] Program and Housing needs.  As a result of this placement, [plaintiff's] custody level, privilege group, Work Status, and visiting status are subject to change.  [Plaintiff] is a participant in the Mental Health Services Delivery System (MHSDS) at the EOP level of care.  TABE SCORE 9.0.

(ECF No. 58 at 17.)  The ICC initial ASU and annual review report states that plaintiff has a "temporary lower bunk (but not tier) restriction through 6/7/14." (ECF No. 58 at 19.)  At the hearing, the MHSDS representative described plaintiff's likelihood of decompensation.  The ICC reviewed plaintiff's case for violence, noting that his underlying criminal offense was first degree murder and attempted murder.  Plaintiff's in-prison record showed he has been engaged in several fights with inmates over the years, and had one SHU term for battery on an inmate.  (ECF No. 58 at 19.)  The ICC retained plaintiff in the ASU on "non-NDS status," referred the case for placement options, and for a sixty day extension.  (Id.)  Plaintiff disagreed with the ICC's actions, asked to be released from the ASU, and "said he does not want to hurt anyone, and that his in-prison record will verify he does not have a history of harming staff."  (Id.)

Dr. Casian's May 19, 2014 chrono states that she was informed of plaintiff's implied threat by Dr. Cirket, who made her aware of plaintiff's "level of agitation." (ECF No. 58 at 21.)  Dr. Casian stated that plaintiff: "has a history of violence, he was uncooperative and disrespectful

////

5

with me every time he had an appointment.  Due to my personal experience with [plaintiff] and his recent statement; I have a serious safety concern."  (ECF No. 58 at 21.)

On July 24, 2014, another ICC hearing was held to review plaintiff's retention in the ASU.  (ECF No. 58 at 23.)  The MHSDS representative described plaintiff's likelihood of decompensation, but no details of such discussion are provided.  Plaintiff's case was referred to the "Difficult to Place ["DTP"]" conference call, and plaintiff's ASU housing was extended through July 28, 2014.  However, after discussion, the DTP referral was rescinded and plaintiff was referred for placement at SAC-IV 180 EOP or Salinas Valley State Prison ("SVSP") 180 EOP.  (ECF No. 58 at 23.)  Plaintiff was retained in ASU for non-disciplinary status and endorsed for transfer to SAC-IV or SVSP-IV.  Plaintiff again disagreed with ICC's actions, and presented "as dejected."  (ECF No. 58 at 23.)

On August 14, 2014, Captain Stout, RJD, issued a general chrono that plaintiff proclaimed he was on a hunger strike, and that by lunch on August 14, 2014, plaintiff had missed nine meals.  Captain Stout interviewed plaintiff on August 14, 2014, and plaintiff "indicated that his protest is based on his retention in the [ASU] and that he wants to be transferred."  (ECF No. 58 at 25.)  Plaintiff also "indicated that he is not getting adequate medical treatment as he has a bad back, an infection on his testicles and pain in his bladder.  He said that he has put in the 'sick call' slips."  (ECF No. 58 at 25.)  Captain Stout noted that plaintiff "had no food items in his cell, and cell inspections will continue hereafter.  Based on his hunger strike, all healthcare protocols should be followed."  (ECF No. 58 at 25.)

Standards

The party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter).  The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature.  Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and can show that an injunction is in the public interest, a preliminary injunction may issue so long as serious questions going to the merits of the case are raised and the balance of hardships tips sharply in plaintiff's favor. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

The principal purpose of preliminary injunctive relief is to preserve the court's power to render a meaningful decision after a trial on the merits. See 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2947 (2d ed. 2010). As noted above, in addition to demonstrating that he will suffer irreparable harm if the court fails to grant the preliminary injunction, plaintiff must show a "fair chance of success on the merits" of his claim. Sports Form, Inc. v. United Press International, Inc., 686 F.2d 750, 754 (9th Cir. 1982) (internal citation omitted). Implicit in this required showing is that the relief awarded is only temporary and there will be a full hearing on the merits of the claims raised in the injunction when the action is brought to trial. In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

In addition, as a general rule this court is unable to issue an order against individuals who are not parties to a suit pending before it. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969) (hereafter "Hazeltine").

Discussion

No defendants are located at RJD. Therefore, plaintiff seeks injunctive relief against individuals who are not named as defendants in this action. This court is unable to issue an order against individuals who are not parties to a suit pending before it. See Hazeltine, 395 U.S. at 112.

Moreover, plaintiff raises new allegations not included in the operative complaint, and not relevant to the claims proceeding in this action. Injunctive relief is an "extraordinary remedy that

7

may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). The purpose of preliminary injunctive relief is to maintain the status quo. "A preliminary injunction may not issue when it is not of the same character as that which may be granted finally and when it deals with matters outside the issues in the underlying suit." 11A Wright & Miller § 2947 (2010). Plaintiff must also demonstrate that his claims are likely to succeed, but plaintiff's claims cannot succeed if the allegations in his motion for a preliminary injunction were not raised in the operative pleading. See Hunter v. Hazelwood, 2006 WL 925142, at *4 (W.D. Wash. Apr.10, 2006) (denying motion for preliminary injunction because it contained new allegations not included in the original complaint that did not involve the defendants and appeared not to have been exhausted administratively). Thus, plaintiff cannot bring new allegations into this suit by means of a motion for a preliminary injunction.

In addition, plaintiff has failed to demonstrate that his life is in imminent danger. Rather, the exhibits provided by plaintiff demonstrate that plaintiff's transfer has been complicated by his status as an inmate serving a sentence of life without parole coupled with his need for an EOP placement. (ECF No. 58 at 23.) The undersigned is concerned that plaintiff has embarked on a voluntary hunger strike, but the exhibit provided by plaintiff demonstrates that prison officials are monitoring plaintiff and his hunger strike in compliance with health care protocols. Indeed, plaintiff does not contend that his health is deteriorating, and he does not seek medical care as relief. Rather, plaintiff's requested remedy is focused on his access to legal materials and transfer out of ASU either back to Facility A at RJD or to a different prison. Absent facts not alleged here, such concerns do not exhibit imminent danger. Moreover, as plaintiff acknowledges, inmates do not have a constitutional right to be housed at a particular facility or institution or to be transferred, or not transferred, from one facility or institution to another. Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam).

Thus, plaintiff does not demonstrate that in the absence of preliminary relief he will imminently suffer irreparable harm. "Speculative injury does not constitute irreparable injury

1    sufficient to warrant granting a preliminary injunction." Caribbean Marine, 844 F.2d at 674,

2    citing Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984).  Rather, a

3    presently existing actual threat must be shown, although the injury need not be certain to occur.

4    See Hazeltine, 395 U.S. at 130-31; F.D.I.C. v. Garner, 125 F.3d 1272, 1279-80 (9th Cir. 1997),

5    cert. denied, 523 U.S. 1020 (1998); Caribbean Marine, 844 F.2d at 674.

6         Accordingly, plaintiff must file any complaint as to unlawful placement or retention in the

7    ASU, retaliation, or deliberate indifference to his serious medical needs by prison officials

8    employed at RJD in the United States District Court for the Central District of California.

9         With regard to plaintiff's claims concerning access to his legal materials, plaintiff has

10   failed to demonstrate that he is unable to access these materials by following the protocol in place

11   for inmates housed in the ASU.  Plaintiff notes that the property officer informed plaintiff that he

12   is only allowed one cubic foot of legal materials in his ASU cell, but that plaintiff may change out

13   such property with legal materials stored elsewhere, so long as plaintiff retains only one cubic

14   foot of legal material in his cell.  Although plaintiff disputes this policy, the undersigned is

15   familiar with such policy for inmates housed in administrative segregation.  See e.g., Asberry v.

16   Cate, 2013 WL 3490724, *2 (E.D. Cal. July 10, 2013) (RJD property officer confirmed on June

17   27, 2013, that inmates assigned to administrative segregation at RJD can have up to one cubic

18   foot of legal materials of his choice in his cell, and excess materials are stored in receiving and

19   release.  If an inmate wants to review stored legal materials, he must submit a legal property

20   request form, which can take one to seven days before the inmate is able to review his legal

21   materials.)  Plaintiff does not allege that he requested to review his legal materials, or to exchange

22   his legal materials according to policy, but rather claims the stated policy is wrong and that he

23   sought an interview about his inability to have more than one cubic foot of property at a time.

24   (ECF No. 58 at 7.)  Thus, plaintiff's allegations concerning access to his legal materials are

25   unavailing.

26        Finally, as to plaintiff's discovery in the instant action, the discovery and scheduling order

27   was not issued until September 9, 2014, so the incidents at RJD did not unduly delay plaintiff's

28   ability to propound discovery.  If plaintiff is unable to obtain his legal materials pertaining to his

1 claims in the instant action by following the protocol governing inmates housed In the ASU at
2 RJD, plaintiff may seek relief at that time, provided he can demonstrate his efforts to comply with
3 the protocol governing such access.

Conclusion

For all of the above reasons, IT IS HEREBY RECOMMENDED that plaintiff's motion for injunctive relief (ECF No. 58) be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 18, 2014

flor3119.pi

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE